AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Google Account:<br>https://drive.google.com/filed/1jZVHDQpffymWxosIgDU_<br>MDeLj89IfRuF/view | )<br>)<br>)<br>)<br>)<br>)<br>) |

26mj4556

Case No. 26-cr-1638-AGS

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment A, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, USC, 952 and 960 | Illegal Importation of Controlled Substances |

The application is based on these facts:

Please see attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DANIEL W WILLETT  
Digitally signed by DANIEL W WILLETT  
Date: 2026.08.03 12:05:35 -07'00'

*Applicant's  signature*

Daniel Willett, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: August 3, 2026

*Judge's signature*

City and state:  San Diego, California

Hon. Janet A. Cabral, United States Magistrate Judge

*Printed name and title*

ATTACHMENT A

Google, LLC is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at 1600 Amphitheater Parkway, Mountain View, California 94043. Google, Inc. hosts the following electronic communication account that is the subject of this search warrant and application:

- https://drive.google.com/file/d/1jZVHDQpffymWxosIgDU_MDeLj89IfRuF/view ("**Target Account**").

<u>ATTACHMENT B</u>

## I.    Service of Warrant

The officer executing the warrant shall permit Google Inc. (Google), as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II.    Items Subject to Seizure from the ISP

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2026 up to and including April 7, 2026, unless otherwise indicated:

1.    All business records and subscriber information, in any form kept, pertaining to the **Target Account**, including:

     a.    Names (including subscriber names, usernames, and screen names);

     b.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

     c.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

     d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

     e.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

     f.    Length of service (including start date and creation IP) and types of service utilized;

g.      Means and source of payment (including any credit card or bank account number); and

h.      Change history.

2.      All device information associated with the **Target Account**, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier ("IMEI") numbers, FCC ID numbers, Android IDs, and telephone numbers.

3.      Records of user activity for each connection made to or from the **Target Account**, including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs;

4.      The contents of all emails associated with the **Target Account**, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

5.      Any records pertaining to the user's contacts, including address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

6.      Any records pertaining to the user's calendar(s), including Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history.

7.      The contents of all text, audio, and video messages associated with the **Target Account**, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

8.      The contents of all records associated with the **Target Account** in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and

device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

9.      The contents of all media associated with the **Target Account** in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

10.      All maps data associated with the **Target Account**, including Google Maps and Google Trips, including all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

11. All Location History and Web & App Activity indicating the location between January 1, 2026 up to and including April 7, 2026 at which time the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data
(such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

12.      All payment and transaction data associated with the **Target Account**, such as Google Pay and Google Wallet, including records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated 4 bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history.

13.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

14.      All activity relating to Google Play, including downloaded, installed, purchased, used, and deleted applications; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history.

15.      All Google Voice records associated with the **Target Account**, including forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

**III**.      **Evidence to be Seized by the Government**

The search of the data supplied by Google pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically-Stored Information" section of the affidavit submitted in support of this search warrant, and will be limited to evidence of violations of 21 U.S.C. Sections 952, and 960 for the period of January 1, 2026 up to and including April 7, 2026, and to the seizure of:

a.      Evidence indicating efforts to import methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.      Evidence indicating accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.      Evidence indicating co-conspirators, criminal associates, or others involved in importation of methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.      Evidence indicating travel to or presence at locations involved in the importation of methamphetamine, fentanyl, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute

federally controlled substance within the United States, such as stash houses, load houses, or delivery points; and

e.     Evidence indicating the identity of the user(s) of the **Target Account**, and any co-conspirators involved in the activities in III(a)-(d) above, including records that help reveal the whereabouts of such person(s);

f.     Evidence that provide context to any communications or records described above, such as messages sent or received in temporal proximity to any relevant electronic communications and any electronic communications tending to identify users of the **Target Account**;

g.     Evidence indicating how and when the **Target Account** was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner; and

h.     Evidence indicating the **Target Account** owner's state of mind as it relates to the crime under investigation.

## AFFIDAVIT IN SUPPORT
## OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Daniel Willett, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of applications for search warrants for information associated with the following Google LLC (Google) accounts that are stored at premises owned, maintained, controlled, or operated by Google, an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California 94043:

    a. https://drive.google.com/filed/1jZVHDQpffymWxosIgDU_MDeLj89IfRuF/
       view (**"Target Account"**);

as described further in Attachment A, for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, importation and distribution of federally controlled substances and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841, 846, 952, 960, and 963 (the "Target Offenses"), as described in Attachment B. This affidavit is made in support of applications for search warrants under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the United States copies of the information (including the content of communications) described in Section II of Attachment B. Upon receipt of the information, United States-authorized persons will review that information to locate the items described in Section III of Attachment B.

2. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers who have personal knowledge of the events and

circumstances described herein; my review of documents and reports related to this investigation; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the applications for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Conversations are set forth below in substance unless noted. Dates, times, and amounts are approximate.

## BACKGROUND AND EXPERIENCE

3.    I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been so employed since June 2025. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. During my training at FLETC, I learned the fundamentals of criminal investigations including, but not limited to, preparing affidavits for arrest and search warrants, gathering evidence, preserving crime scenes, and using electronic evidence – all in relation to violations of the United States Code.

4.    I am currently assigned to the Contraband Smuggling Group 2 ("CS-2") of the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. CS-2 primarily investigates illegal narcotic smuggling at the Port of Entries ("POE") in the San Diego Area of Responsibility ("AOR") to include San Ysidro POE, Otay Mesa POE, and Tecate POE. CS-2 investigates criminal organizations trafficking illegal narcotics and the distribution networks in the San Diego AOR and beyond. These narcotic investigations include investigating controlled substances to include fentanyl, cocaine, methamphetamine, marijuana, and heroin in and around the San Diego, California area.

5.    Through my training, experience, and conversations with other law enforcement personnel, I am aware that it is common practice for narcotics traffickers to

2

work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Moreover, I am aware that it is a common practice for drug traffickers to work in concert with coconspirators and others using electronic communications and remote computing services, such as those offered by Google. For example, drug traffickers often use Google accounts to communicate using email and messaging services, such as Gmail and Google Messages, to coordinate travel, engage with financial institutions through which they launder proceeds, and connect with drug sources and customers. In addition, because Google services are accessible on cell phones and laptops, information Google collects about the locations of those devices when they access Google services also provides relevant evidence of drug trafficking location information (such as ledgers, photographs, communications, or documents relating to the planning and execution of a drug conspiracy).

3

7.    Additionally, information can be backed up on Google and maintained on Google Drive,[1] even if a user was using a non-Google platform (Android) phone. Such backed up information could contain evidence of the crime charged, even if it was deleted from a physical device.

## JURISDICTION

8.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18, United States Code, Section 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.    On April 7, 2026, at approximately 3:50 a.m., Daniel LOPEZ Patino, ("LOPEZ"), a Mexican Citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #6. LOPEZ was the driver, sole occupant, and registered owner of a 2014 Toyota Prius ("the vehicle") bearing California ("CA") license plates.

10.    A Canine Enforcement Team ("CET") was conducting pre-primary operations when the Human and Narcotic Detection Dog ("HNDD") alerted to the front passenger door of the vehicle. The CET informed an Anti-Terrorism Contraband Enforcement Team ("ATCET") officer of the alert.

11.    An ATCET Customs and Border Protection Officer ("CBPO") responded and received a negative Customs declaration from LOPEZ. LOPEZ stated he was crossing the border to go to San Diego, California. While being inspected, the ATCET officer observed

---

[1] Further discussed in the section titled BACKGROUND INFORMATION REGARDING GOOGLE.

4

a package inside the panel of the passenger front door. The vehicle was referred for further inspection.

12.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the driver and passenger side front and rear door panels, and the rear quarter panels of the vehicle.

13.    Further inspection of the vehicle resulted in the discovery of 44 packages concealed in all four door panels and the rear quarter panels of the vehicle, with a total approximate weight of 56.26 kgs. (124.03 lbs.). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

14.    Inspection of the packages revealed a Quick Response ("QR") code affixed to the inner packaging of multiple packages. Specifically, Agents saw a QR code from the exterior of the packaging on at least five packages. Agents then removed the outer layer of the packaging from three packages confirming they each had QR codes. Agents then examined the QR codes on the three packages, confirming they were the same QR code. Agents scanned the QR code which led to a password protected Google Drive account associated with the **Target Account**. Agents made no further attempts to access the Google Drive account.

 

Figure 1: Photograph of the exterior of a package with wrapping intact. A QR code can be seen on the top left corner.

Figure 2: Photograph of the exterior of a package with wrapping removed and the QR code exposed.

5



Figure 3: Photograph of all three packages which had the exterior packaging opened revealing matching QR codes.

15. In a post-arrest interview, the Defendant denied knowledge that there were drugs concealed throughout his vehicle. Instead, he stated that he had been involved in smuggling cash into Mexico from the United States, starting in early January 2026. Records checks show LOPEZ crossed into the United States from Mexico as early as January 2, 2026, in the vehicle. LOPEZ stated he had been transporting bulk cash on behalf of the same individual, a male named Christian, since early January 2026.

16. LOPEZ stated that he had his car repaired by an individual named "El Tio" just three days prior to the smuggling event.

17. LOPEZ was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

18. The undersigned sent Google a preservation letter on April 13, 2026, and a second preservation letter on July 8, 2026.

19. Based upon my training and experience, it is also not unusual for individuals, such as LOPEZ, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer

6

than they claim. Accordingly, I request permission to search the **Target Account** for data beginning on January 1, 2026, up to and including April 7, 2026.

20.    Identity is an element of every crime. Establishing the individual with access to or control over the **Target Account** at or around the time when data or applications were accessed or when electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data were generated helps attribute that evidence to a particular individual. Thus, items that tend to identify the user of, or persons with control over or access to, the **Target Account** also constitute evidence of the offenses being investigated.

## BACKGROUND INFORMATION REGARDING GOOGLE

21.    Google is a United States company that offers to the public through its Google accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google account.

22.    In addition, Google offers an operating system (OS) for mobile devices, including cellular phones, known as Android. Users of Android devices are prompted to connect their device to a Google account when they first turn on the device, and a Google account is required for certain functionalities on these devices.

23.    When individuals register with Google for a Google account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment. Signing up for a Google

7

account automatically generates an email address at the domain gmail.com. That email address is the log-in username for access to the Google account.

24.    In addition to the above, Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol (IP) addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the Google account.

25.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google account, a user can connect to Google's full suite of services offered to the general public, including those described in further detail below. For example, Google provides email services (called Gmail) to Google accounts through email addresses at gmail.com which can be accessed, including through a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google account by the user. Google preserves emails associated with a Google account indefinitely, unless the user deletes them.

26.    Additionally, Google provides several messaging services, including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user has

8

not disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

27.    Google also provides an address book for Google accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users also have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves Contacts indefinitely unless the user deletes them. Contacts can be accessed from the same browser window as other Google products, such as Gmail.

28.    Additionally, Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone to Google Photos. Google preserves files stored in Google Photos indefinitely unless the user deletes them.

29.    Google also offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google account is not required to use Google Maps, but if users log into their Google account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create

9

personalized maps using Google My Maps. Google stores Maps data indefinitely unless the user deletes it.

30. Additionally, Google collects and retains data about the location at which Google account services are accessed. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google account signed in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

31. Finally, Google offers Google Drive, a cloud-based storage service that enables users to store and access files online. The web service provides a centralized hub where changes to content are automatically saved and synchronized across devices connected to that account. Google Drive can be used to store documents, videos, images, and other files, data that can be accessed later from any device. Google Drive data may be

deleted if accounts are inactive after a number of years. Files (photos, videos, contacts, etc.) from a device (such as a phone) may be backed up to Google Drive.

32. Like many other accounts and websites, QR codes can be used to direct a user to a particular Google Drive account.

## ITEMS TO BE SEIZED

33. Investigators know that individuals working with criminal organizations often use multiple communication platforms in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Indeed, based on training and experience, investigators are aware that, in addition to telephone and text messaging services (*i.e.*, MMS and SMS), other communication platforms accessible through the telephone, like Duo, Messages, Hangouts, Meet and Chat, and third-party communication applications, are also often used by drug traffickers to engage in their illegal activity. These communication services can be used to coordinate payments and meetings, conduct negotiations and other matters relating to the criminal scheme, and to send location data, photographs, audio files, and/or videos, concerning criminal activity, all of which are available from Google as outlined above. Based on my training and experience, voicemails, audio files, photographs, videos, and documents also are often created and used in furtherance of criminal activity. Map searches and location data, which also are available from Google, also may show the presence at known stash locations or other significant locations. Thus, stored communications and files connected to the **Target Account** may provide direct evidence of the offenses under investigation. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

34. Based on training and experience, investigators are aware that evidence of who was using the **Target Account** and from where, and evidence related to criminal

11

activity of the kind at issue here, may be found in the files and records described in Attachment B and available from Google. For example, account activity, like internet searches, may provide relevant insight into an account owner's state of mind as it relates to the offenses under investigation, such as the owner's motive and intent to commit a crime (*e.g.*, communications indicating a plan to commit a crime) or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement). Communications, contacts, photographs, internet searches, location information and other information that Google can produce related to the **Target Account** also can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation, including addresses and/or vehicles used by the subjects of the investigation. And, the identification of apps downloaded from Google Play may reveal services used in furtherance of the crimes under investigation, such as services used to communicate with co-conspirators. Therefore, Google's servers are likely to contain stored electronic communications and information constituting evidence of the crimes under investigation.

35.    Google's servers also are likely to contain "user attribution" evidence. Such evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, device information, the data associated with the foregoing (such as location, date, and time information), photographs, videos, and audio files may be evidence of who used or controlled the **Target Account** at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices – and thereby which user(s) – likely accessed the **Target Account**. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crimes under investigation.

36.    Federal agents and investigative support personnel are trained and

experienced in identifying communications relevant to the crimes under investigation. The personnel of Google and Microsoft (ISPs) are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Google for the relevant accounts and then to analyze the contents of those accounts on the premises of Google. The impact on Google's business would be disruptive and severe.

37.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Google account, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the privacy of ISP subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow ISPs to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

38.     Analyzing the data to be provided by the ISPs may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications, which

13

files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

39. The ISPs do not always organize the electronic files they provide chronologically, which makes review even more time-consuming and may also require the examiner to review each page or record for responsive material.

40. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by the ISP, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

41. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the **Target Account** and any electronic communications sent or received in temporal proximity to incriminating electronic communications that provide context to the incriminating communications.

42. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## GENUINE RISKS OF DESTRUCTION

43. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case,

14

only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PRIOR ATTEMPTS TO OBTAIN DATA

44.    Prior attempts by the United States to obtain this evidence are limited to a consent search of LOPEZ's cellular phone download, where the undersigned unsuccessfully searched for information regarding a Google account associated with the **Target Account**.

### CONCLUSION

45.    Based on the forgoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of the Target Offenses, as described in Attachment B, will be found in the properties to be searched, as described in Attachment A.

DANIEL W WILLETT
Digitally signed by DANIEL W WILLETT
Date: 2026.08.03 12:04:20 -07'00'

Daniel Willett
HSI Special Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___3rd___ day of August, 2026.

Hon. Janet A. Cabral
United States Magistrate Judge

15